UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA                                                :
                                                                        :   S7 15 Cr. 95 (AJN)
            - v. -                                                      :
                                                                        :
FABIAN MORRISON,                                                        :
                                                                        :
                            Defendant.                                  :
                                                                        :
------------------------------------------------------------------------X


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                        JOON H. KIM
                                        Acting United States Attorney
                                        Southern District of New York
                                        One St. Andrew's Plaza
                                        New York, New York 10007


RACHEL MAIMIN
JESSICA FEINSTEIN
THANE REHN
Assistant United States Attorneys
      - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA                                                :
                                                                        :    S7 15 Cr. 95 (AJN)
                 - v. -                                                 :
                                                                        :
FABIAN MORRISON,                                                        :
                                                                        :
                        Defendant.                                      :
                                                                        :
------------------------------------------------------------------------X
```

## PRELIMINARY STATEMENT

The defendant in this case, Fabian Morrison, is scheduled to be sentenced on January 8, 2018. The Government respectfully submits this memorandum in advance of that sentencing and in response to Morrison's sentencing memorandum, dated December 5, 2017, which requests a sentence of 60 months' imprisonment—a significant downward variance from the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 84 to 105 months' imprisonment. For the reasons that follow, the Government disagrees and respectfully requests that the Court impose a sentence within the Guidelines range. Morrison was an associate of a violent street gang—the Big Money Bosses ("BMB" or the "Gang")—with which Morrison sold marijuana and carried firearms. While incarcerated in federal custody, Morrison has had multiple significant disciplinary infractions, including a fight with a corrections officer during which Morrison broke the officer's nose. Morrison's serious and escalating criminal conduct, including possession of a firearm while selling drugs with a dangerous gang, and his demonstrated inability to stay out of trouble while incarcerated, together suggest that a sentence within the Guidelines

range is necessary to provide just punishment and deterrence, and to protect the public from future crimes of the defendant.

I.   **Procedural History**

On April 27, 2016, the S2 Indictment in this case was unsealed, charging 63 members and associates of BMB with: (1) racketeering conspiracy, in violation of Title 18, United States Code Section 1962; (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution, in violation of Title 21, United States Code, Section 860; and/or (4) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

On September 7, 2016, Morrison was separately charged in a one-count Indictment with assault on a federal officer, in violation of Title 18, United States Code, Sections 111(a), (b), and 1114. *United States* v. *Morrison*, 16 Cr. 598 (DAB).

The Government and Morrison were able to reach a joint resolution of the two cases. On August 14, 2017, Morrison pled guilty to a Superseding Information, S7 15 Cr. 95, which charged the defendant with racketeering conspiracy (Count 1), and with assault of a federal officer (Count 2). (PSR ¶ 7.)

II.   **Offense Conduct**

   A.   **Background**

Beginning in December 2014, the New York City Police Department, the Drug Enforcement Administration, Homeland Security Investigations, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation into two rival street gangs—BMB and the 2Fly YGz ("2Fly")—that were operating in the Bronx, New York. The investigation revealed that since at least in or about 2007, up until in or about 2016, members of

2

BMB and 2Fly were involved in a variety of racketeering acts, including murders, attempted murders, robberies, narcotics trafficking, bank fraud, and counterfeit currency offenses.

### B. BMB

The structure of BMB is described accurately in the PSR.

BMB was a subset of the "Young Bosses," or "YBz" street gang, which operates throughout the New York City area. BMB—whose members also sometimes refer to themselves as the "Money Making Mafia" or "Triple M"—operated primarily on White Plains Road from 215th Street to 233rd Street in the Bronx, which is a long stretch of road under a subway train overpass that is hedged on each side by single-family homes and local commercial establishments. BMB's narcotics trafficking activity was based principally in the vicinity of White Plains Road and 224th Street, an open-air drug spot that was referred to by gang members as the "Forts." BMB members sold drugs and down White Plains Road, however, including at a spot on 219th Street and a house on 230th Street. BMB members sold crack cocaine, marijuana, and prescription pills, including Percocet pills (i.e., oxycodone). BMB members kept firearms at each of these White Plains Road locations. BMB members also operated a drug spot on Boston Road and Eastchester Road in the Bronx, which they refer to as "B Road." BMB members who worked principally at the B Road spot typically refer to themselves as "Blamma." Generally speaking, BMB members were encouraged to continue openly "jacking," or proclaiming their membership in the gang, and many did so not only in person but also through social media websites such as Facebook.

In addition to its narcotics trafficking, BMB members and associates engaged in acts of violence, including shootings, stabbings, and gang assaults; these acts of violence protected the power of the gang, deterred attacks from rivals, and secured the gang's territories and drug spots.

3

Moreover, members who engaged in a sufficient amount of violence could earn a leadership position, which was referred to as a "Big Suit." Members with "Big Suit" status were further subcategorized as, among other things, "Burberry Suits," "Louis Suits," "Gucci Suits," "Ferragamo Suits," and "Sean John Suits," in order to signify their relative rank in the gang. Among other things, a BMB member with "Big Suit" status had the authority to recruit other individuals into the gang. Two of the highest-ranking "Big Suits" in BMB were NICO BURRELL, a/k/a "Zico Nico," and DOUGLAS MCLARTY, a/k/a "Q Don." Both BURRELL and MCLARTY enhanced their status in the gang, in part, by committing attempted murders when they were each juveniles.

Members of BMB rose in status and rank within the gang not only by engaging in acts of violence, but also by maintaining their membership in the gang for a long period of time. Members who were loyal associates for a substantial amount of time are referred to as "Day One Niggas," meaning that they have been associating with the gang since its earliest days. For example, in a posting on Facebook on July 7, 2013, BMB member RASHEID BUTLER, a/k/a "Rah," wrote: "i love my Day1 Niggas that was here since this #TripleM Shit 1ST STARTED." Similarly, BMB leader NICO BURRELL, a/k/a "Zico Nico," discusses the "Day One" concept in a rap video posted on YouTube in December 2015 and entitled "Live From Gutter." In the video, BURRELL raps, "No new niggas, only day one / I know they ain't tellin' if that day come," after which another rapper repeats in the background, "no snitchin.'"

BMB has, more generally, developed a gang norm against "snitchin,'" or cooperating with law enforcement. For example, a BMB associate posted on Facebook on July 20, 2011, "Like QuDOn Said 'No Snitchin Policy'"; the reference to "QuDOn" is a reference to MCLARTY, who is one of BMB's leaders and whose alias is "Q Don." BMB's norm against

"snitchin'" was fostered through YouTube videos and social media postings, including postings in which gang members are praised for their refusals to cooperate with law enforcement in particular instances. The norm is also enforced through disparagement of and threats of violence against BMB members who are suspected of having violated the norm by cooperating. During the course of this investigation, law enforcement learned of at least one instance in which a BMB member's home was fired upon because he made a statement to law enforcement about individuals with whom he had committed a robbery. During another instance, the child of a suspected cooperator in this case was threatened and spat upon in the street. The norm against cooperation facilitates the gang's criminal enterprise and is one of the reasons why members of BMB tend to commit their robberies and fraud offenses with other members of BMB.

Many of the specific acts of violence committed by BMB members related to its longstanding rivalry with 2Fly, which is based principally in the nearby Eastchester Gardens public housing development ("Eastchester Gardens"), but which also has members who live in the "Valley" area just east of BMB's "B Road" spot on Boston Road and Eastchester Road. BMB also has developed rivalries with other street gangs in the northern Bronx, including the "Young Shooter Gang," or "YSGz," which is based in the Edenwald public housing development ("Edenwald"), and the "Slut Gang," which is based in the Boston-Secor public housing development ("Boston-Secor"). In connection with these rivalries, BMB members developed a practice of "mobbing," meaning to gather in large groups and travel to the base of operations of a rival gang to engage in violence there. Members of rival gangs also sometimes went "mobbing" and attack or attempt to attack BMB at its bases of operations. Videos of "mobbing" incidents were posted on YouTube. The close proximity of the BMB, 2Fly, YSGz,

5

and Slut Gang bases of operations—all of which are in or on the border of the New York City Police Department's 47th Precinct—contributed to the frequency of acts of violence.

In addition to acts of violence, members and associates of BMB promoted their gang and disparaged rival gang members by highlighting a distinguishing feature of BMB: it is not based in a housing development, as are its principal rivals 2Fly (in the Eastchester Gardens), YSGz (in Edenwald), and the Slut Gang (in Boston-Secor). As noted above, BMB principally operated along White Plains Road, a long stretch of road hedged on each side by single-family homes and local commercial establishments. The name of the gang ("Big Money Bosses") and the other allusions to wealth that the gang employs (for example, the brand-name clothing retailers used to identify leadership positions) all serve to underscore this difference. In addition, members and associates of BMB have publicly mocked the living conditions of the housing developments in which many of their rivals live. For example, in a Facebook post on July 10, 2014, BMB member DONQUE TYRELL, a/k/a "Polo Rell," posted a photograph of a young child laying on a bed and covered with cockroaches, with the caption "MEANWHILE IN EDENWALD." In connection with the posting of this picture, TYRELL wrote, "Dirty ass project," followed by six smiley-face "emoticons." Similarly, in a Facebook posting on May 28, 2014, BMB member MASHUD YODA, a/k/a "Papa Ola," writes, "No Lie ECG [*i.e.,* the Eastchester Gardens] The Dirtiest PROJECTS UPTOWN . . . . Like OBAMA Said CHANGE But I Guess He forgot Bout ECG !!"

Consistent with this feature of BMB, members and associates of the gang engaged not only in narcotics distribution and robberies to enrich and distinguish its members from rivals, but also engaged in a variety of frauds, including bank fraud and counterfeit currency offenses. To

perpetrate some of these fraud offenses, BMB members and associates often employed their girlfriends and female acquaintances.

### C. Morrison's Role with the Gang

Morrison was associated with BMB, and sold marijuana at BMB's "Forts" location on White Plains Road and 224th Street. On June 29, 2011, Morrison was arrested in the vicinity of White Plains Road and 219th Street, one of BMB's drug spots, and was found in possession of eight bags of marijuana. On October 13, 2012, Morrison was arrested in the vicinity of White Plains Road and 217th Street, and again found in possession of marijuana. Morrison conspired to distribute and possess with intent to distribute between 60 and 80 kilograms of marijuana. (PSR ¶ 22).

Morrison regularly carried a gun. On January 16, 2015, Morrison was arrested for possession of a loaded firearm in the vicinity of Bronxwood Avenue and 221st Street, in BMB territory. As a result of that arrest, Morrison was charged in a separate federal indictment for being a felon-in-possession, *United States v. Morrison*, 15 Cr. 47 (JMF), and ultimately sentenced to 41 months' imprisonment. Morrison was charged with the instant racketeering case while he was in federal custody for that prior federal gun case. (PSR ¶¶ 22, 62).

### D. Assault of the Corrections Officer

On July 25, 2016, while detained at the Metropolitan Correctional Center ("MCC"), Morrison broke the nose of a federal corrections officer (the "Officer") during an altercation (the "July 2016 Assault"). (PSR ¶ 24). Prior to the incident, the Officer had searched the cell belonging to Morrison and had collected alleged contraband. After searching Morrison's cell, the Officer passed Morrison in another part of the unit. Morrison then verbally confronted the Officer. After ordering the other inmates to clear the area, the Officer ordered Morrison to

7

submit to a pat down of his person.  The Officer put Morrison against the wall for a pat down, and Morrison spun around, striking the Officer in the nose.

## II.	The Defendant's Criminal History & Disciplinary History

Morrison has a prior conviction from 2008 for unauthorized use of a vehicle based on an incident in which Morrison fled the scene of a car accident.  (PSR ¶¶ 55, 56.)  As a result of this conviction, Morrison was on probation from May 7, 2009 until May 6, 2012.

On May 7, 2009, Morrison pleaded guilty to attempted robbery in the third degree, and received a sentence of five years' probation. The conviction arose from a robbery that the defendant and others committed on White Plains Road and 225th Street during which one of the perpetrators grabbed the victim's bag. (PSR ¶¶  57, 58).

Morrison also has a prior conviction from 2011 for reckless endangerment stemming from an incident in which he refused to pull over his car when officers attempted to conduct a traffic stop. According to the arrest report, Morrison attempted to flee the scene, resisted arrest, and attempted to strike the officers multiple times. (PSR ¶¶  60, 61).

On June 3, 2015, the defendant pleaded guilty to the federal felon in possession charge discussed above. (PSR ¶ 62). On October 14, 2015, the Honorable Jesse M. Furman sentenced Morrison to 41 months' imprisonment, to be followed by a 3-year term of supervised release.[1]

In addition to the above criminal convictions, Morrison has been found guilty of several disciplinary charges while detained in federal custody, separate and apart from the July 2016 assault on the Officer for which he is being sentenced.  On May 9, 2016, Morrison was found guilty of phone abuse. On May 26, 2016, Morrison was found guilty of possessing a non-

---

[1] As set forth in the parties' plea agreement, the prior federal gun arrest is conduct relevant to Count One of the instant offense, and the Government does not object to the application of U.S.S.G. § 5G1.3(b)(1) and (2) in the computation of the final sentence.

8

hazardous tool. And on October 20, 2017, Morrison was found guilty of possessing a dangerous weapon and of assaulting without serious injury (the "September 2017 Assault"). (PSR ¶¶ 9-11). Regarding the September 2017 Assault, reports obtained from the Bureau of Prisons state that on September 9, 2017, Morrison assaulted another inmate, knocking him to the ground, and striking him in an up and down motion with a sharpened object. (*See* Exhibit A).

### III.   The PSR and Guidelines Calculation

The PSR and the parties' plea agreement calculate the defendant's total offense level as 25, with a Criminal History Category of IV, resulting in a Guidelines range of 84 to 105 months' imprisonment.

### 3553(a) ARGUMENT

Pursuant to the factors set forth in Section 3553(a) of Title 18, a sentence within the Guidelines range is necessary to reflect the serious nature of the offenses and provide just punishment, as well as to protect the public from future crimes of the defendant and to afford adequate deterrence. Morrison's request for a significant downward departure—two years from the bottom of the Guidelines range—cannot be justified in light of Morrison's association with a violent street gang, firearm possession, and his escalating criminal history and violent behavior while incarcerated.

Morrison's association with BMB, including his sale of marijuana along with members and associates of the Gang in gang-controlled territory, and his firearm possession while doing so, helped finance a violent street gang, and thereby enabled that gang to terrorize a community in the Bronx for years. The risk of violence was enhanced and perpetuated by individuals like Morrison who had access to guns while engaged in the sale of drugs with a gang engaged in territorial disputes. A lengthy sentence of incarceration is necessary not only to reflect the nature

of the offense and provide just punishment, but also to send a message of general deterrence that involvement in gang activity will lead to a significant prison term.

Morrison's assault on a federal corrections officer after he was incarcerated likewise calls for a Guidelines sentence to account for the serious bodily harm to the victim and, significantly, to deter against similar assaults on federal officers whose jobs are to maintain order and safety in federal prisons and courthouses. In his sentencing submission, Morrison tries to deflect blame for his conduct onto the victim, arguing that the assault was the culmination of the Officer's unjustified decision to discipline Morrison for perceived infractions. Regardless of what interactions led to the July 2016 Assault—and the parties are in agreement on the primary facts, set forth above—the results are straightforward: the Officer's nose was broken while he was engaged in his official duties.

Indeed, Morrison's recasting of himself as the victim of a "bullying" officer is belied by Morrison's own disciplinary history while incarcerated. Since May 2016, Morrison has been found guilty of three other disciplinary infractions—including, most significantly, a violent assault on another inmate in September 2017, *after* he pleaded guilty in the instant case and was awaiting sentencing. This record of misconduct at a time when Morrison was in a restrictive environment and should have been on his best behavior suggests that Morrison continues to pose a danger to the public, and that he has not learned from his mistakes or been adequately deterred by his conviction for the July 2016 Assault.

Finally, Morrison's criminal history provides further indication that specific deterrence and protection of the public are concerns in this case. Morrison's multiple prior convictions, including for a robbery, have not deterred him from continuing to engage in criminal conduct, even while on parole. It is worth noting that Morrison committed the July 2016 Assault (and also

the October 2017 Assault) *after* Judge Furman sentenced Morrison to a 41-month prison term for the gun charge. The length of that sentence, and the possibility that he might face additional prison time for further criminal conduct, were not enough to deter Morrison from engaging in violent and harmful behavior. A Guideline sentence is therefore sufficient but not greater than necessary to deter Morrison from committing dangerous crimes in the future, and to protect the public.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 84 to 105 months.

Dated: New York, New York
January 4, 2018

        Respectfully submitted,

        JOON H. KIM,
        Acting United States Attorney for the
        Southern District of New York,

By: \_\_/s/_____
      Jessica Feinstein
      Rachel Maimin
      Thane Rehn
      Assistant United States Attorneys
      (212) 637-2460

# EXHIBIT A

BP-A0304
AUG 11

# DISCIPLINE HEARING OFFICER REPORT

CDFRM

**U.S. DEPARTMENT OF JUSTICE**  **FEDERAL BUREAU PRISONS**

| Institution: MDC BROOKLYN | Incident Report number: 3044074 | |
|---|---|---|
| NAME OF INMATE: MORRISON, FABIAN | REG. NO: 71910-054 | UNIT: G |
| Date of Incident Report: 10-13-2017 | Offense Code: 104, 224 | |

Date of Incident: 9-7-2017

Summary of Charges: POSSESSION OF A WEAPON AND ASSAULT

I. NOTICE OF CHARGE(S)

    A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) **10-13-2017** at (time) **11:00 AM** (by staff member) **J. HAYES**

    B. The DHO Hearing was held on (date) **10-20-2017** at (time) **11:00 A.M.**

    C. The inmate was advised of the rights before the DHO by (staff member): **J. BENCEBI** on (date) **10-15-2017** and a copy of the advisement of rights form is attached.

II. STAFF REPRESENTATIVE

    A. Inmate waived right to staff representative. Yes **X** No ___.

    B. Inmate requested staff representative and **N/A** appeared.

    C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: **N/A**

    D. Staff representative **N/A** was appointed.

III. PRESENTATION OF EVIDENCE

    A. Inmate **XX** (admits) ___ (denies) the charge(s).

    B. Summary of inmate statement:
**Inmate Morrison stated he was ready to proceed. He requested no staff representative, requested no witnesses, and stated he understood his rights before the DHO. Inmate Morrison stated he received his copy of the incident report. Inmate Morrison stated the incident report was true but it was self-defense. He stated he took the weapon away from an inmate who was going to use it against him.**

    2. The following persons were called as witness at this hearing and appeared: **N/A**

    3. A summary of the testimony of each witness is attached **N/A**

    4. The following persons requested were not called for the reason(s) given: **N/A**

    5. Unavailable witnesses were requested to submit written statements and those statements received were considered **N/A**

    D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents: **REPORTING STAFF MEMBER'S STATEMENT, SIS REPORT, CAPTURED VIDEO FOOTAGE, MEDICAL ASSESSMENT, PHOTOGRAPHS AND STAFF MEMOS.**

    E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because: **N/A**

IV. FINDINGS OF THE DHO

    **X** A. The act was committed as charged.

    ___ B. The following act was committed:

    ___ C. No prohibited act was committed: Expunge according to Inmate Discipline PS.

1

| BP-A0304 | DISCIPLINE HEARING OFFICER REPORT | CDFRM |
|---|---|---|
| AUG 11 | | |
| U.S. DEPARTMENT OF JUSTICE | | FEDERAL BUREAU PRISONS |

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| MORRISON, FABIAN | 71910-054 | 10-20-2017 |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.):

The DHO finds on 9-7-17, you were involved in a violation of codes 104 AND 224, possession of a weapon and assaulting another person.

Specific evidence relied upon to support this finding: The Reporting officer states on 10-13-17, at approximately 8:45 a.m., a SIS investigation was concluded. The officer stated that based on inmate statements, witness statements, medical assessments and captured video footage, it was determined and concluded that on 9-7-2017 at approximately 8:54 PM, you assaulted another inmate with a weapon. Specifically, captured video shows you used a sharpened metal object and assaulted inmate Reid #77000-053 by striking inmate Reid with your right hand to his facial area while he was on the telephone knocking him to the ground. You then continued the assault by striking Reid in an up and down motion with the sharpened object while Reid was on the ground, injuring inmate Reid.

The DHO finds you have committed the Prohibited Act 104 and 224, possession of a weapon and assault. Those actions cannot and will not be tolerated. It endangers the safety of both staff and inmates, thereby jeopardizing the security and orderly running of the institution.

VI. SANCTION OR ACTION TAKEN:

Offense Severity: **HIGH**
SGT Available: **54**

**Code 104:**
DIS GCT — 27 DAYS PER MANDATORY PLRA SENTENCING REQUIREMENT
DS — 30 DAYS
LP MPLAYER: — 180 DAYS

**Code 224:**
DIS GCT — 27 DAYS PER MANDATORY PLRA SENTENCING REQUIREMENT
DS — 15 DAYS
LP EMAIL — 180 DAYS

VII. REASON FOR SANCTION OR ACTION TAKEN:

This incident does not involve a privilege however, the DHO feels the Loss of email and MP3 player for 180 days may impress upon you the seriousness of your actions. The sanctions imposed are to punish you for your actions and to deter you from such behavior in the future.

VIII. APPEAL RIGHTS: **X** The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

IX. Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| D. Gonzalez, Alternate DHO | | 10-22-2017 |

Delivered to Inmate: _____

Prescribed by P5270

Replaces BP-304(52) of JAN 88

2

BP-A0293         Inmate Rights at Discipline Hearing    CDFRM
AUG 11
U.S. DEPARTMENT OF JUSTICE             FEDERAL BUREAU OF PRISONS

Institution: MDC BROOKLYN

As an inmate charged with a violation of Bureau of Prisons rules or regulations referred to the Discipline Hearing Officer (DHO) for disposition, you have the following rights:

    1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;

    2. The right to have a full-time member of the staff who is reasonably available to represent you before the Discipline Hearing Officer;

    3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;

    4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;

    5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

    6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,

    7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a hearing before the Discipline Hearing Officer. I have further been advised that if I have previously received either a presumptive or effective parole date from the Parole Commission, a finding by the DHO that I committed the prohibited act(s) may result in a rescission or retardation by the Parole Commission of the presumptive or effective parole date.

Inmate's Name: MORRISON, FABIAN            Reg. No.: 71910-054

Inmate Signature: /s/            Date: 10/15/2017

Notice of rights given to inmate (Date/time): 10-15-2017   9:00AM

by: JBENCEBI/
         Staff Printed Name/Signature

(This form may be replicated via WP)          Replaces BP-S293(52) of JAN 88.

PDF           Prescribed by P5270          1

BP-A0294  **Notice of Discipline Hearing Before the (DHO)** CDFRM
AUG 11
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

---

MDC BROOKLYN
Institution

10/15/2017
Date

TO: MORRISON, FABIAN                          REG. NO.: 71910-054

ALLEGED VIOLATION(S): ASSAULTING ; POSSESSING A DANGEROUS WEAPON

DATE OF OFFENSE: 09/07/2017                   CODE NO.: 224; 104

You are being referred to the DHO for the above charge(s).

The hearing will be held on: _____ at _____ (A.M./P.M.) at the following location:
_____

You are entitled to have a full-time staff member represent you at the hearing. Please indicate below whether you desire to have a staff representative, and if so, his or her name.

I (do) ____ (do not) ____ wish to have a staff representative.

If so, the staff representative's name is: _____

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety. Names of witnesses you wish to call should be listed below. Briefly state to what each proposed witness would be able to testify.

I (do) ____ (do not) ____ wish to have witnesses.

| NAME: | CAN TESTIFY TO: |
|---|---|
|  |  |
| NAME: | CAN TESTIFY TO: |
|  |  |
| NAME: | CAN TESTIFY TO: |
|  |  |

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s). Repetitive witnesses and repetitive character references need not be called. Unavailable witnesses may be asked to submit written statements.

If additional space is needed, use the reverse side of this form. Date, sign, and return this form to the DHO.

DATE: 10/15/2017    SIGNATURE: _[signature]_

Notice of hearing before DHO given inmate  10-15-2017  9:00AM    By JBENCEBI/ _[signature]_
                                           Date/Time                Staff Printed Name/Signature

*(This form may be replicated via WP)*                   Replaces BP-294(52) of JAN 88

PDF                                                       Prescribed by P5270

BP-A0288
AUG 11

**INCIDENT REPORT** CDFRM

U.S. DEPARTMENT OF JUSTICE — FEDERAL BUREAU OF PRISONS

### Part I - Incident Report

Report No: 3644074

| 1. Institution: | MDC BROOKLYN | | |
|---|---|---|---|
| 2. Inmate's Name: Morrison, Fabian | 3. Register Number: 71910-054 | 4. Date of Incident: 9-07-2017 | 5. Time: 8:54 pm |
| 6. Place of Incident: Common Area | 7. Assignment: UNASSG | 8. Unit: G-43 | |
| 9. Incident: Possession, manufacture, or introduction of a weapon; Assaulting any person | | 10. Prohibited Act Code(s): 104, 224 | |

**11. Description Of Incident** (Date: **10/13/2017** Time: **8:30 AM** Staff became aware of incident)

Based on the conclusion of an SIS investigation, which included inmate statements, witness statements, medical assessments, and captured video footage, it was determined and concluded that on 9-07-2017 at approximately 8:54 PM, you assaulted another inmate with a weapon. Specifically, captured video shows you used a sharpened metal object and assaulted inmate Reid, William Reg. No. 77000-053 by striking Reid with your right hand to his facial area while he was on the telephone knocking him to the ground. Then you continued the assault by striking Reid in an up and down motion with the sharpened metal object while Reid was on the ground injuring Reid.

| 12. Typed Name/Signature of Reporting Employee | 13. Date And Time |
|---|---|
| J. Parker / [signature] SIS Technician | 10/13/2017 8:45 AM |

| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): J. Huey [signature] | 15. Date Incident Report Delivered: 10/13/17 | 16. Time Incident Report Delivered: 11:00 AM |
|---|---|---|

### Part II - Committee Action

**17. Comments of Inmate to Committee Regarding Above Incident**

No comment

**18. A. It is the finding of the committee that you:**
___ Committed the Prohibited Act as charged.
___ Did not Commit a Prohibited Act.
___ Committed Prohibited Act Code(s) ____

B. [X] The Committee is referring the Charge(s) to the DHO for further Hearing.

C. ___ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

**19. Committee Decision is Based on Specific Evidence as Follows:**

Due to the severity of the charge the UDC is referring to the DHO

**20. Committee action and/or recommendation if referred to DHO** (Contingent upon DHO finding inmate committed prohibited act)

If found guilty the UDC recommends 30 days DS, 180 days loss of e-mails.

**21. Date And Time Of Action** 10/15/17 9:00 AM (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

[signature]
Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name)

| Part III - Investigation | 22. Date And Time Investigation Began<br>10-13-2017   11:00 AM |
|---|---|

23. Inmate Advised Of Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process. You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.

The Inmate Was Advised Of The Above Right By B.Somerville At (Date/time) 10-13-2017 11:00 AM

24. Inmate Statement And Attitude

Inmate MORRISON #71910-054 was advised of his rights and stated that he understood his rights. Inmate MORRISON was given a copy of this report and was read the contents of the report. Inmate MORRISON didn't wish to make any statement.
Inmate displayed a fair attitude.

25. Other Facts About The Incident, Statements Of Those Persons Present At Scene, Disposition Of Evidence, etc.
Inmate did not request any witnesses during the investigation.

26. Investigator's Comments And Conclusions

Based on the information in section #11 of this report, this investigator believes this report to be properly written.

27. Action Taken

Inmate is to remain in his current assignment and this report is to be referred to UDC.

Date and Time Investigation Completed     10-13-17 / 11:00 AM

Printed Name/signature Of Investigator          B. Somerville

_____                    Lieutenant
Signature                                           Title